UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

CIVIL ACTION NO. 5:09-CV-00114

| | |
|---|---|
| JAMES WESLEY JONES, ) ) Plaintiff, ) ) v. ) ) PENN NATIONAL INSURANCE ) COMPANY, ) ) Defendant. ) ) _____ ) | **MEMORANDUM OPINION AND ORDER** |

This is an action by Plaintiff James Wesley Jones against Defendant Penn National Insurance Company[1] alleging violations of the North Carolina Unfair or Deceptive Trade Practices Act ("UDTPA") arising from Defendant's carriage of Plaintiff's underinsured motorist insurance. The matter presently before the court is Defendant Penn National Insurance Company's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 6). The parties have timely filed memoranda of law in support of and opposition to this motion (Docs. 6-8), and this matter is now ripe for resolution. For the reasons that follow, Defendant's Motion for Judgment on the Pleadings will be granted as to all of Plaintiff's claims.

---

[1] In its Answer, (Doc. 3), Defendant notes that this case was erroneously captioned as to its corporate name, and provides "Pennsylvania National Mutual Casualty Insurance Company" by way of correction.

1

**STATEMENT OF THE CASE**

On September 16, 2009, Plaintiff James Wesley Jones ("Jones") filed suit against Defendant Penn National Insurance Company ("Penn National") in the Superior Court of Catawba County, North Carolina. On October 22, 2009, Penn National properly filed a Notice of Removal to the District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1446. (Doc. 1). Penn National is a corporation with its principle place of business in Pennsylvania, and Jones is a citizen of North Carolina. In bringing suit, Jones seeks "compensatory damages, treble damages, [and] punitive damages" and bases the present action on an underlying state court judgment in the amount of $185,000. (Doc. 1). This Court, therefore, has appropriate subject matter jurisdiction in this matter pursuant to 28. U.S.C. § 1332.

Jones sets forth causes of action for unfair and deceptive trade practices under UDTPA, breach of the covenant of good faith and fair dealing, and aggravated tortious breach of contract. The undisputed allegations in the pleadings reveal the following series of underlying events:

On December 23, 2001, Jones was injured in an automobile collision with one Gaston McKinley Harris ("Harris"), who was killed in the same collision. Harris maintained a liability insurance policy through Allstate Insurance Company with a limit of $30,000 for bodily injury. Jones maintained underinsured motorist coverage[2] ("UIM") through Penn National in a policy that provided coverage in the amount of $100,000 per person and $300,000 per accident. An official investigation into the collision determined that Harris' blood alcohol volume was nearly

---

[2] " In 1979 the North Carolina General Assembly. . . . sought to eliminate the underinsurance loophole and to protect motorists from financial loss due to injuries caused by a tortfeasor having only the minimum liability insurance coverage. Underinsured motorist coverage provides the injured insured a second source of recovery in the event the tortfeasor has insufficient liability coverage or assets to compensate the victim fully." John F. Buckley, <u>Underinsured Motorist Coverage: Legislative Solutions to Settlement Difficulties</u>, 64 N.C. L. Rev. 1408, 1409-1410 (1986).

four times the legal limit for a motor vehicle operator in North Carolina, and that Harris lost control of his vehicle, crossed into the opposing lane of traffic and collided with Jones' vehicle. Jones filed a lawsuit against the estate of Harris in December 2004, and also served Penn National as his first-party insurance carrier. Pursuant to its insurance contract with Harris, Allstate defended the lawsuit.

On January 16, 2006, Jones, a representative of Penn National, and a representative of Allstate Insurance Company attended a mediated settlement conference which resulted in an impasse when Allstate offered only $7,500 to settle Jones' claims against Harris. No settlement agreement resulted from this conference. The case proceeded to trial, where Allstate was allowed to defend the case in its own name. At conclusion of trial, Jones obtained a verdict for $185,000 in compensatory damages in addition to costs and interest. Pursuant to Harris' liability coverage agreement, Allstate paid Jones $30,000–the limits of the coverage. At this point, Penn National paid Jones $70,000 pursuant to the terms of the UIM agreement.

In the instant civil action, Jones claims that Penn National engaged in unlawful conduct by failing to provide UIM coverage, and other services, before he obtained a jury verdict and before Allstate paid its policy limits. Jones roots this argument in N.C. Gen. Stat. § 75-1.1 *et seq,* the Unfair and Deceptive Trade Practices Act ("UDTPA"),  providing a private cause of action for unfair trade practices, and N.C. Gen. Stat. § 58-63-15, defining unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. In opposing Judgment on the Pleadings, Jones asserts that genuine issues of material fact remain for further discovery and a potential trial on the merits, namely whether Penn National's behavior prior to making the $70,000 UIM payment falls within the scope of deceptive or unfair practices stated in §58-63-15.  Penn National asserts that it is entitled to  judgment on the pleadings pursuant to

N.C. Gen. Stat. § 20-279.21(b)(4), the Motor Vehicle Safety and Financial Responsibility Act, which establishes the scope of UIM coverage in North Carolina and provides the core legal requirements for UIM policies and payment terms. Penn National argues that this statute, as written and as interpreted by the North Carolina Supreme Court in *Register v. White,* 358 N.C. 691 (2004), makes the availability of UIM coverage expressly conditional on the exhaustion of liability insurance. Because it paid Jones under his UIM policy at the time liability coverage was exhausted–upon entry of the damages award and full $30,000 payment by Allstate–Penn National asserts that it is in compliance with all statutory duties. In other words, Penn National contends that Jones' claims must fail as a matter of law because they seek recovery for alleged breaches of statutory and implied contractual duties that, pursuant to § 20-279.21(b)(4), had not yet come into existence.

## ANALYSIS

I. *Judgment on the Pleadings v. Summary Judgment*

First, on its own accord, the Court must address whether judgment on the pleadings is the appropriate procedural mechanism for the decision it has been asked to render. Generally, in evaluating judgment on the pleadings, a court is limited to the contents of pleading documents, *A.S. Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964), documents attached to the pleadings, Fed. R. Civ. P. 10(c),[3] and matters sufficiently incorporated by reference. Penn National relies on N.C. Gen. Stat. § 20-279.21 to establish its argument in favor of judgment as a matter of law. However applicable, this statute is neither cited nor directly referenced in either the complaint (Doc. 1 Ex. 1) or the answer (Doc. 3)–the

---

[3] Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

only pleading documents in front of this Court.[4] The statute only appears in Penn National's Motion for Judgment on the Pleadings, (Doc. 6), support briefs (Docs. 6, 8), and Jones' responses. (Doc. 7). "If on a motion under rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Here, the matter outside of the pleadings is a North Carolina statute, thus the question presented is whether the Court can consider the non-factual contents of a memorandum of law in evaluating a motion for judgment on the pleadings without converting the motion to one for summary judgment. Two approaches allow the Court to proceed with the instant motion without conversion to summary judgment.

**A. Allowing general consideration of non-factual content of legal memoranda where all parties have been noticed**

Generally, a court should limit its consideration to the "four corners" of the pleadings, *A.S. Abell Co.,* 338 F.2d at 193, but decisions in other circuits have made clear exceptions for legal briefs and memoranda. For example, in *Concordia v. Bendekovic,* the Eleventh Circuit held that, "[m]emoranda of points and authorities as well as briefs and oral arguments. . . are not considered matters outside the pleadings for the purpose of conversion [to a motion for summary judgment]." 693 F.2d. 1073, 1075 (11th Cir. 1982); *see also U.S. General Inc. v. Schroeder,* 400 F.Supp. 713, 715 (E.D. Wis. 1975) ("[t]he Court. . .must confine the scope of its analysis to matters presented by the pleadings, memorandums, briefs and oral arguments."). Consideration of legal documents outside the pleadings is limited to the non-factual contents thereof. *See Engler v. Cendant Corp.,* 434 F. Supp. 2d. 119 (E.D.N.Y. 2006) (determining that a District

---

[4]Fed. R. Civ. P. 7(a) ("Pleadings. Only these pleadings are allowed: 1) a complaint; 2) an answer to a complaint; 3) an answer to a counterclaim designated as a counterclaim; 4)an answer to a crossclaim; 5) a third-party complaint; 6) an answer to a third-party complaint; and 7) if the court orders one, a reply to an answer.")

court cannot consider admissions or statements in parties' memoranda as factual allegations); *Thomas v. District of Columbia Government,* 580 F. Supp. 2d 142 (D.D.C. 2008) ("factual allegations appearing in briefs or memoranda generally are not considered. . . .").

The modern system of notice pleading is intended to ensure that parties have fair notice of the claims, and defenses against them, as well as the grounds upon which they rest. *See generally Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41 (1957)). This intention would likely be defeated if courts relied on facts presented in memoranda of law, which do not require responses, and therefore do not create the equivalent level of notice as a formal pleading document. Jurisprudence on this question clearly indicates that the purpose of limiting a motion for judgment on the pleadings to the contents of the pleadings, *per se*, is to prevent a court from basing decisions on factual allegations made in one party's documents that the other has not had an opportunity to address. In *Henschke v. New York Hospital-Cornell Medical Center,* 821 F. Supp. 166 (S.D.N.Y. 1993), the court was presented with matters outside of the pleadings similar to the instant case and reasoned, "where [the parties] have actual notice of all the information in the movant's papers. . .the necessity of translating a Rule [12(c)] motion into one under Rule 56 is largely dissipated." *Id.* at 169 (quoting *Cortec Indus., Inc. v. Sun Holding L.P.,* 949 F.2d 42 (2d Cir. 1991). Here, both parties have filed memoranda with this Court addressing the merits of N.C. Gen. Stat. § 20.279.21. Accordingly, concerns about sufficient notice to the parties before deciding a potentially dispositive motion are alleviated.

**B. Allowing consideration by means of judicial notice and the public record**

In the motion before the Court, the matter outside the pleadings is a North Carolina Statute. By definition, laws, statutes and other public acts are matters of the public record. In

*Lamar v. Micou,* the Supreme Court reiterated that, "[t]he law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof."[5] 114 U.S. 218, 223 (1885) (citing *Owings v. Hull*, 9 Pet. 607 (1835); *Pennington v. Gibson*, 16 How. 65 (1853); *Covington Draw-bridge Co. v. Shepherd*, 20 How. 227. (1857)). In the specific context of a motion for judgment on the pleadings, "federal courts may consider materials that are public records or otherwise appropriate for taking judicial notice without converting. . .to a motion for summary judgment." *Jackson v. City of Columbus,* 194. F.3d 737, 745 (6th Cir. 1999); *see also Sykes v. Glaxo-SmithKline,* 484 F. Supp. 2d 289, 295 (E.D. Pa 2007) ("conversion is not required, however, when the court considers. . . matters of the public record, and materials subject to judicial notice."). Accordingly, because this Court can take judicial notice of N.C. Gen. Stat. § 20-279.21, the fact that it has been presented outside the pleadings does not mandate conversion to a motion for summary judgment. The Court will proceed under the standards for judgment on the pleadings in full consideration of N.C. Gen. Stat. § 20-279.21.

**II.** *Standard of Review*

Fed. R. Civ. P. 12(c) provides, "After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." In ruling on a Rule 12(c) motion for judgment on the pleadings, the Court "must accept the nonmovant's allegations as true; viewing the facts in the light most favorable to the nonmoving party. Judgment on the pleadings should be granted if the movant is entitled to *judgment as a matter of law*." *Bradley v. Ramsey,*

---

[5]The Fourth Circuit Court of Appeals directly applied this principle to North Carolina statutes in *Southern Ry. Co. v. O'Dell,* 252 F. 540 n.4 (4th Cir. 1918) ("There is no force in the position that it was necessary to plead and prove the applicable statute of the state of North Carolina, where the accident occurred. The federal courts take judicial notice of the statutes of the states.") (citations omitted).

329 F.Supp.2d 617, 622 (W.D.N.C. 2004) (quoting *Moore's Federal Practice,* § 12.38 (3d ed.)) (emphasis added). Motions for judgment on the pleadings are treated with similar standards to motions made under Fed. R. Civ. P. 12(b)(6), however in evaluating a motion for judgment on the pleadings the "court is to consider the answer as well as the complaint." *Continental Cleaning Services v. U.P.S. Inc.*, No.1:98-CV-1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13,1999) (quoting *Menominee Indian Tribe v. Thompson*, 943 F. Supp. 999, 1005 (W.D.Wis. 1996)). Ultimately, a motion for judgment on the pleadings serves to test the sufficiency of the complaint and will result in claims being dismissed, "where the material facts are not in dispute and a judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noted facts." *Continental Cleaning Services,* 1999 WL 1939249, at *1.

In opposing judgment on the pleadings, Jones contends material facts remain in dispute, namely whether Penn National's actions in the period between the automobile collision and the ultimate $70,000 UIM payment constitute instances of conduct that are prohibited by N.C. Gen. Stat. § 58-63-15(11). (Pl.'s Response in Opposition to Def.'s Mot. 5-6, Doc. 7). Penn National's actions during this period form the basis of each of Jones' three claims for relief.[6] A material fact is one that could lead to judgment in favor of one party or another. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, if facts adduced regarding Penn National's actions during this period could affect the potential disposition of Jones' claims, it would not be appropriate to grant judgment on the pleadings. To determine whether the outcome of these claims would be affected by such facts – rendering them material – the Court must first analyze the controlling

---

[6]In his complaint, Jones sets forth three claims for relief: (1) Unfair or Deceptive Trade Practices or Acts Pursuant to N.C. Gen. Stat. §75-1.1 et seq.; (2)Breach of Covenant of Good Faith and Fair Dealing; (3) Aggravated Tortious Breach of Contract.

legal framework.

### III. *Statutory Analysis: A UIM Carrier's Duty to Settle a Claim Arises at the Point of Liability Coverage Exhaustion*

In their respective pleadings and briefs and before the Court, the parties have presented alternate views of North Carolina's UIM statute (§20-279.21) and its applicability to the State's Unfair and Deceptive Trade Practices Act (§75-1.1) and to the definition of unfair claim settlement practices in the business of insurance (§58-63-15(11)). Both parties correctly note that a violation of N.C. Gen. Stat. § 58-63-15 gives rise to liability under §75-1.1. (Def.'s Reply Br., Doc. 8; Pl.'s Resp. In Opp'n., Doc. 7). The North Carolina Supreme Court held that such a violation "constitutes a violation of §75-1.1, as a matter of law. . . ." *Gray v. North Carolina Ins.Underwriting Ass'n*, 352 N.C. 61, 71 (2000); *see also Blis Day Spa, LLC v. Hartford Ins. Group,* 427 F. Supp. 2d 621, 634-35 (W.D.N.C. 2006). The statutory question presented in the present dispute is, therefore, whether a UIM carrier's failure to pay on an insured's policy *before* the liability carrier tenders its coverage limits constitutes an unfair claim settlement practice under §58-63-15(11).

N.C. Gen. Stat.§ 58-63-15(11) defines unfair claim settlement practices in the business of insurance. Jones alleges that Penn National's actions, before it made the $70,000 UIM payment, constitute the following statutorily prohibited conduct:

* * *

> b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> d. Refusing to pay claims without conducting a reasonable investigation based

upon all available information;

* * *

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured.

N.C. Gen. Stat. § 58-63-15(11). According to Jones, Penn National was bound by a statutory duty – following the accident and before the final payment satisfying the UIM limits – to carry out these responsibilities. (Pl.'s Reply in Opp'n., Doc. 7, 6). Penn National argues that UIM coverage, per § 20-279.21(b)(4), did not apply until Harris' liability policy was exhausted in satisfaction of the judgment in the underlying lawsuit. In this, Penn National contends that Jones did not have a legal right to UIM benefits, and conversely that it did not have a statutory duty to provide them, before the conclusion of that suit – the point at which it tendered payment. N.C. Gen. Stat.§ 20-279.21(b)(4) provides in pertinent part:

> Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, *all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted*. Exhaustion of that liability coverage for the purpose of any single liability claim presented for underinsured motorist coverage is deemed to occur when either (a) *the limits of liability per claim have been paid upon the claim*, or (b) by reason of multiple claims, the aggregate per occurrence limit of liability has been paid."

N.C. Gen. Stat. § 20-279.21(b)(4) (emphasis added).

A federal court sitting in diversity jurisdiction is bound to construe and apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). It is undisputed that

North Carolina Law is applicable in this case. In *Register v. White,* 358 N.C. 691 (2004), the North Carolina Supreme Court offered extensive interpretation of §20-279.21, holding that "a UIM claim is independent of the underlying tort action and does not necessarily accrue at the time an injury becomes apparent." *Id.* at 697. The Court further held that "an insured's contractual right to UIM coverage is expressly conditioned on the exhaustion of the liability carrier's policy limits," and that, "[e]xhaustion occurs when the liability carrier has tendered the limits of its policy in a settlement offer or in a satisfaction of a judgment. Once this exhaustion requirement is satisfied, *but not before*, an insured may seek UIM benefits from a UIM carrier." *Id.* at 698 (emphasis added); *see also Liberty Mutual Ins. Co. v. Pennington,* 356 N.C. 571, 577 (2002) ("[a UIM carrier] would become answerable for the insured's injuries only when the limits of the tortfeasor's liability coverage have been exhausted.").

To establish Penn National's liability, Jones relies upon provisions of N.C. Gen. Stat. §58-63-15(11) that pertain to unfair *claim* settlement practices. However, it is clear from the decisions cited above, and the language of §20-279.21 itself, that a UIM claim does not arise until liability coverage has been exhausted by a judgment or settlement. Under the law of North Carolina, Jones did not have an active UIM claim until liability coverage was exhausted at conclusion of the underlying lawsuit. Thus, Penn National could not have been involved in unfair claim settlement practices, under §58-63-15(11), in the period between the automobile collision and the UIM payment: at that point, there was no claim to settle.

In his opposition to judgment on the pleadings, Jones argues that §20-279.21, "can be read to alert UIM insurers that if liability insurance has been exhausted then they have the immediate duty to pay their share of the remaining monies owed to a Plaintiff under the UIM policy." (Doc. 7. 6). However, as demonstrated in *Register*, North Carolina courts have not

11

interpreted the law in this manner. Generally, Jones contends that, "exhaustion is not a condition precedent to the duty of a UIM carrier to act in conformity with. . .§58-63-15(11)." (Doc. 7. 6). Nonetheless, by its very language §58-63-15(11) defines unfair claim settlement practices, and, in the context of UIM insurance, North Carolina law clearly establishes that a claim does not arise until the tortfeasor's liability coverage has been exhausted. It is the role of this Court to construe and apply the law of the forum state, including the common law. *See Erie R.R. Co.,* 304 U.S. at 78. Jones has not provided, nor has this Court found, support for his proposed alternate reading of §20-279.21 and its interaction with §58-63-15(11). Jones also argues that his proposed reading of the law should control on public policy grounds, arguing that "a contrary reading would likely encourage unscrupulous UIM carriers to sit idly by, with no concern for their insured, and simply await the outcome of negotiations or litigation between the insured and liability carriers." (Doc. 7. 6). In *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571 (2002), the North Carolina Supreme court expressly addressed this concern and determined that the exhaustion requirement contained in § 20-279.21 was consistent with the State's UIM public policy objectives. The Court began its analysis by stating:

> "[T]he avowed purpose of the Financial Responsibility Act [§ 20-279.21] ... is to compensate the innocent victims of financially irresponsible motorists." The Act is remedial in nature and is "to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." The purpose of the Act, we have said, "is best served when [every provision of the Act] is interpreted to provide the innocent victim with the fullest possible protection."

*Liberty Mut. Ins. Co.,* 356 N.C. at 573-574. (internal citations omitted). In the same decision, the Court held, "[a UIM carrier]. . .would become answerable for the insured's injuries only when the tortfeasor's liability coverage has been exhausted." *Id.* at 577 (internal citations omitted). Under the law of North Carolina, establishing a UIM carrier's duty to pay a claim at

the point of liability coverage exhaustion comports with the State's policy objectives.

Because the North Carolina statutes governing UIM insurance do not create a duty to pay claims or provide other coverage before the tortfeasor's liability insurance is exhausted, facts pertaining to Penn National's actions before that point would not affect the disposition of Jones' claims under N.C. Gen. Stat. § 58-63-15(11) and §75-1.1. The only disputed factual allegations in the pleadings pertain to Penn National's actions before the law created a UIM claim. Therefore, there are no genuine issues of material fact in dispute, and the Court will proceed to evaluate whether Penn National is entitled to a judgment on the pleadings on the claims against it.

**IV.** *Judgment on the Pleadings Applied*

For the purposes of judgment on the pleadings, the Court will accept as true the factual allegations contained in the complaint and draw all reasonable inferences in favor of Jones, the non-moving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).

**A. Jones' First Claim for Unfair or Deceptive Trade Practices or Acts**

Jones' first claim for relief alleges that Penn National did not comply with five subsections of N.C. Gen. Stat. § 58-63-15(11), constituting unfair or deceptive acts or practices in the settlement of an insurance claim. (Compl. ¶¶ 21-34). As discussed above, under North Carolina Law, a UIM claim does not materialize until liability coverage is exhausted. It is uncontested that Penn National paid Jones UIM policy limits at the point the tortfeasor's liability coverage was exhausted. Because this claim for relief alleges violations of N.C. Gen. Stat. §58-63-15(11), which governs claim settlement practices, before a UIM claim was legally established, it fails as a matter of law.

13

**B. Jones' Second Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Jones' second claim for relief alleges that Penn National's "[refusal] in good faith to investigate, settle, or even attempt to settle Plaintiff's claim" was a breach of the duty of good faith and fair dealing that arises in an insurance policy. (Compl. ¶¶ 35-38). The North Carolina Supreme Court held, "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to *receive the benefits of the agreement*." *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228 (1985) (citation omitted) (emphasis added). In the instant case, pursuant to N.C. Gen. Stat. § 20-279.21, Jones' rights to receive the benefits of his UIM agreement with Penn National materialized at the point when the tortfeasor's liability coverage was exhausted. Because this claim alleges breach of the covenant of good faith and fair dealing before Jones had a right to receive the benefits of the UIM agreement, it also fails as a matter of law.

**C. Jones' Third Claim for Aggravated Tortious Breach of Contract**

Jones' third claim for relief alleges that Penn National's actions before the final verdict in the underlying lawsuit constitute purposeful delay and denial of its obligations as well as misuses of power and authority tantamount to outrageous conduct, which constitute tortious breach of conduct. Under North Carolina Law, the elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract. *Jackson v. California Hardwood Co.*, 120 N.C. App. 870, 871 (1995).

In the instant case, Jones contends that Penn National breached its contract by failing to comply with the covenant of good faith and fair dealing (Compl. ¶ 40), and by refusing to take various actions toward settlement before the exhaustion of the tortfeasor's liability coverage. (Compl. ¶¶ 41-49). Breach of the covenant of good faith and fair dealing is addressed above.

Jones contends that Penn National's refusal to attempt settlement before exhaustion is a breach of contract. Pursuant to N.C. Gen. Stat. § 20-279.21, however, a UIM carrier's contruactual duty to pay its insured does not arise before the point of liability coverage exhaustion. *See Register,* 358 N.C. at 198. Because this claim alleges breach of a contractual duty that had not yet come into existence, and because it is undisputed that Penn National paid the limits of UIM coverage at the point its contractual duty to pay was established, this claim also fails as a matter of law.

## CONCLUSION

In sum, because North Carolina law does not create an actionable UIM claim before liability coverage is exhausted, the Court finds that Defendant Penn National is entitled to judgment on the pleadings.

**THEREFORE, IT IS HEREBY ORDERED THAT** Defendant Penn National Insurance Company's Motion for Judgment on the Pleadings (Doc. 6) is **GRANTED** and that this case is **DISMISSED** as to all claims and parties.

Signed: July 19, 2011

Richard L. Voorhees
United States District Judge